(87 South. 728)

No. 24091.

ST. LANDRY PARISH SCHOOL BOARD v. LARCADE.

(Feb. 28, 1921.)

*(Syllabus by Editorial Staff.)*

1. Schools and school districts ⊚⇒97(4)—Mistake in notice of bond election held not to invalidate election.

Notice for a school bond election by inadvertence stating that the meeting was to be held on January 3, 1919, instead of January 3, 1920, *held* harmless error, insufficient to invalidate the election; publication being made during November and December, 1919, and the ordinance calling the election, appearing with the notice, making the error manifest.

2. Schools and school districts ⊚⇒97(4)—Notice of time for bond election indispensable.

Notice to the voters as to when an election for the issuance of school bonds is to be held is so indispensable that the absence of it is not a mere irregularity, but a nullity.

3. Schools and school districts ⊚⇒97(4)—Sixty-day prescription held to cure nullity due to mistake as to date in notice of bond election.

The 60-day prescription, under Act No. 256 of 1910, § 17, *held* to cure the nullity due to a mistake in the notice as to date of holding a bond election.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Suit by the St. Landry Parish School Board against Leo Larcade. Decree for plaintiff, and defendant appeals. Affirmed.

Fontenot & Swords, of Opelousas, for appellant.

R. Lee Garland, Dist. Atty., and L. L. Perrault, both of Opelousas, for appellee.

PROVOSTY, J. This suit is to compel defendant to comply with his bid to purchase $30,000 of bonds of the Second school district of the Third police jury ward of the parish of St. Landry.

An election was required by law to be held to take the sense of the property tax payers of the school district on the question of whether the debt to be represented by the bonds should be created and the bonds issued, and notice of the date when this election should be held was required to be published during 30 days in one of the newspapers of the parish. This was done; but by a typographical error the date at which the election would be held was stated in the notice to be January 3, 1919, instead of January 3, 1920.

[1] As the publications were made during the months of November and December, 1919, the date was an impossible one; and very evidently by force of habit and inadvertence the current, or old, year had been inserted in place of the new. So obvious was this that it could not mislead any one. And, moreover, the ordinance calling the election appeared in the newspaper along with the notice and just above it, so as, virtually, to constitute one document with it, making the error still more manifest. We conclude that the error was harmless.

Fifty-two voted for; none against. If any one desiring to vote against had been misled by the said typographical error, the fact could easily have been ascertained and proved; and no such proof was made.

The assessed valuation of the school district was "not less than $400,000," and only $92,126 of value was voted, and hence a majority of the taxpayers in amount failed to vote. Learned counsel argue that from this an inference arises that many voters—perhaps a majority in number, as well as in amount—stayed away from the polls because of want of notice.

But we cannot but think that, if there had

been any opposition to the voting of this tax, and this defect in the notice had been the cause of any voters not attending the election, the courts would have heard of it, either in a direct suit to annul the election or at any rate in the present suit; and no proof of anything of that kind has been made.

[2, 3] Notice to the voters of when an election is to be held is so indispensable that the absence of it is not a mere irregularity, but a nullity. Hence, what we hold in this case is that the notice, such as it was, was sufficient. We may add, however, that, even if it had been insufficient, the nullity would have been cured by the prescription of 60 days; for under section 17 of the very statute under which the election was held (Act 256, p. 426, of 1910) all nullities in such elections are cured unless suit to have the nullity declared is brought within 60 days from the date of the proclamation of the result of the election; and no such suit was brought. The said section reads:

"Section 17. Be it further enacted, etc., that, for a period of sixty days from the day of the promulgation of the result of any such election, any person in interest shall have the right to contest the legality of such election for any cause; after which time no one shall have any cause of action to contest the regularity, formality, or legality of said election for any cause whatever. If the validity of any election held under the provisions of this act is not raised within the sixty days herein prescribed, then no governing authority of any subdivision herein named, required to levy a tax or issue bonds as authorized at an election or under this act, shall be permitted to refuse to perform that duty and urge as an excuse or reason therefor, that some provision of the Constitution or law of Louisiana has not been complied with, but it shall be conclusively presumed that every legal requirement has been complied with, and no court shall have authority to inquire into such matters after the lapse of sixty days as herein provided."

The learned trial judge held with plaintiff. Judgment affirmed.